# EXHIBIT "A"

Thomas J. Herten, Esq. (Attorney No. 004491974)
Nicole G. McDonough, Esq. (Attorney No. 025762008)
**ARCHER & GREINER, P.C.**
21 Main Street, Suite 353
Court Plaza South - West Wing
Hackensack, New Jersey 07601
(201) 342-6000

Ethan Glass *(*pro hac vice* to be pending)*
Michael Bonanno *(*pro hac vice* to be pending)*
Kristin Starr *(*pro hac vice* to be pending)*
**QUINN EMANUEL URQUHART ＆SULLIVAN, LLP**
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000

*Attorneys for Plaintiff Mercedes-Benz USA, LLC*

| | |
|---|---|
| Mercedes-Benz USA, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　　　-*v*-<br><br>Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., NYK Bulkship (USA) Inc., Wallenius Wilhelmsen Logistics AS aka Wallenius Wilhelmsen Ocean AS, Wallenius Wilhelmsen Logistics Americas, LLC, Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk Shipping (USA), LLC, Kawasaki Kisen Kaisha, Ltd., and "K" Line America, Inc.,<br><br>　　　　　　Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br>DOCKET NO. BER-L-<br><br>CIVIL ACTION<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Mercedes-Benz USA, LLC ("MBUSA"), as and for its Complaint against

Defendants Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., NYK Bulkship

(USA) Inc. (referred to collectively herein as "NYK"), Wallenius Wilhelmsen Logistics AS also

known as Wallenius Wilhelmsen Ocean AS, Wallenius Wilhelmsen Logistics Americas LLC

(referred to collectively herein as "WWL"), Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk

Shipping (USA), LLC (referred to collectively herein as "MOL"), Kawasaki Kisen Kaisha, Ltd., and "K" Line America, Inc. (referred to collectively herein as "K Line"), alleges and states as follows:

## INTRODUCTION

1.       Defendants participated in a conspiracy to overcharge customers, like MBUSA, for roll on, roll off cargo services ("RoRo Services").

2.       Each Defendant, directly or through its corporate parent or affiliates, has admitted that it participated in the illegal conspiracy and agreed to pay substantial fines (including criminal fines) relating to their involvement in the unlawful enterprise.

3.       As a result of the conspiracy, MBUSA overpaid for RoRo Services procured between at least 1997 and 2013.

4.       MBUSA brings this action to recover compensation for those overpayments in the form of monetary damages arising from Defendants' violations of New Jersey law, including but not limited to the New Jersey Antitrust Act, N.J. STAT. ANN. §§ 56:9-1 *et seq.*

## PARTIES

5.       MBUSA imports, distributes, and sells Mercedes Benz automobiles and light trucks in the United States.  It is incorporated in Delaware and, during all relevant times, MBUSA's principal place of business was located in Montvale, New Jersey.

6.       Nippon Yusen Kabushiki Kaisha is a company with its principal place of business in Tokyo, Japan. On information and belief, NYK Line (North America) Inc. is an agent of Nippon Yusen Kabushiki Kaisha.  NYK Line (North America) Inc. is incorporated in Delaware, and its principal place of business is Secaucus, New Jersey.  On information and belief, NYK Bulkship

(USA) Inc. is an agent of Nippon Yusen Kabushiki Kaisha.   NYK Bulkship (USA) Inc. is
incorporated in Delaware, and its principal place of business is Secaucus, New Jersey.

      7.    Wallenius Wilhelmsen Logistics AS also known as Wallenius Wilhelmsen Ocean
AS is a company with its principal place of business in Lysaker, Norway.  On information and
belief, Wallenius Wilhelmsen Logistics Americas LLC is an agent of Wallenius Wilhelmsen
Logistics AS also known as Wallenius Wilhelmsen Ocean AS. Wallenius Wilhelmsen Logistics
Americas, LLC is incorporated in Delaware, and its principal place of business is Parsippany, New
Jersey.

      8.    Mitsui O.S.K. Lines, Ltd. is a company with its principal place of business in
Tokyo, Japan.  On information and belief, Mitsui O.S.K. Bulk Shipping (USA), LLC is an agent
of Mitsui O.S.K. Lines, Ltd.   Mitsui O.S.K. Bulk Shipping (USA), LLC is incorporated in
Delaware law, and its principal place of business is Woodbridge, New Jersey.

      9.    Kawasaki Kisen Kaisha, Ltd. is a company with its principal place of business in
Tokyo, Japan. On information and belief, "K" Line America, Inc. is an agent of Kawasaki Kisen
Kaisha, Ltd.  "K" Line America, Inc. is incorporated in Michigan, and its principal place of
business is Glen Allen, Virginia.

## JURISDICTION AND VENUE

      10.    This Court has valid *in personam* jurisdiction over the Defendants because each
Defendant availed itself of this Court's jurisdiction by maintaining intentional, continuous, and
systematic activities within the State of New Jersey, including but not limited to, contracting with
MBUSA for the provision of RoRo Services when MBUSA was based in Montvale, New Jersey
and selecting New Jersey law as the applicable law to govern certain disputes relating to
Defendants' provision of RoRo Services to MBUSA.

11.     Each Defendant engaged in regular communications with MBUSA's Montvale-based employees concerning the provision of RoRo Services and received payments for those services that were initiated by MBUSA from within the State of New Jersey. MBUSA also made direct payments for RoRo Services in New Jersey to several Defendants with a principal place of business in New Jersey, including at least Defendants NYK Bulkship (USA) Inc., NYK Line (North America) Inc., and Mitsui O.S.K Bulk Shipping (USA), LLC.

12.     Additionally, this Court has valid *in personam* jurisdiction over NYK and K Line because certain written contracts between MBUSA and those entities for RoRo Services expressly provide that "State and/or Federal Courts of New Jersey" shall have "exclusive jurisdiction" over "any and all disputes arising out of or in connection with" those agreements, and are "governed by the laws of the State of New Jersey."

13.     Venue is proper in this Court under Rule 4:3-2 because, at all relevant times, MBUSA was located in Bergen County and the cause of action arose in Bergen County.

## FACTUAL ALLEGATIONS

14.     RoRo Services are deep water, international liner shipping services for cargo that can be "rolled on" an ocean-going vessel at a port of loading (without the use of shipping containers) and then "rolled off" the vessel at the destination port. Between 1997 and 2013, pursuant to a series of express or implied contracts entered into with MBUSA, each Defendant directly or through its corporate parent or affiliates, transported Mercedes Benz automobiles and light trucks at least between Europe and the United States.

15.     But unbeknownst to MBUSA, from at least 1997, each of the Defendants, directly or through their corporate parent or affiliates, secretively met and conspired with other providers of RoRo Services to agree to overcharge customers, like MBUSA, for RoRo Services.   As

confirmed in guilty pleas, governmental findings, and other now-public information, during this time period, representatives of Defendants or their corporate parents or affiliates, regularly met with each other (and representatives from other competitors) in person at their offices, bars, restaurants, or other gatherings, such as industry trade associations, and had regular telephone conversations to exchange competitively sensitive information about prices, customers, and routes in order to rig bids, allocate customers or markets, and fix prices. As a result of the conspiracy, Defendants and the other providers of RoRo Services, directly or through their corporate parents or affiliates, overcharged MBUSA for RoRo Services.

16. On September 6, 2012, the press reported that government authorities in Japan, Europe, and the United States performed "dawn raids" at the offices of the providers of RoRo Services as part of a criminal investigation.

17. Since the dawn raids, each Defendant group has received immunity for revealing the existence of the illegal conspiracy, pleaded guilty to participating in an illegal conspiracy, and/or agreed to pay substantial fines (including criminal fines) relating to their participation in the unlawful conspiracy.

18. *As to NYK.* On December 29, 2014, Defendant Nippon Yusen Kabushiki Kaisha pleaded guilty to participating in a conspiracy to "suppress and eliminate competition by allocating customers and routes, rigging bids, and fixing prices for international ocean shipping services for roll-on, roll-off cargo, such as cars and trucks, to and from the United States and elsewhere. . . ." According to the plea agreement, the conspiracy was carried out "through certain employees in both Japan and the United States, including high-level personnel and other individuals with substantial authority within the company." The plea agreement further revealed the conspiracy involved unlawful agreements to "allocate certain customers and routes, rig certain bids, and to

5

fix, stabilize, and maintain the prices for certain international ocean shipping services for roll-on, roll-off cargo to and from the United States and elsewhere." On information and belief, Nippon Yusen Kabushiki Kaisha participated in the conspiracy directly and through its U.S. agents and wholly-owned U.S. subsidiaries (including Defendants NYK Line (North America) Inc. and NYK Bulkship (USA) Inc.). As a part of its plea agreement with the U.S. Department of Justice, Nippon Yusen Kabushiki Kaisha agreed to pay a criminal fine of $59.5 million.

19. On December 23, 2013, the Federal Maritime Commission announced that it had reached a "compromise agreement" with NYK to resolve allegations that NYK had "act[ed] in concert with other ocean common carriers with respect to the shipment of automobiles and other motorized vehicles by RO/RO or specialized car carrier vessels, where such agreement(s) had not been filed with the Commission or become effective under the Shipping Act." Under the agreement with the Federal Maritime Commission, NYK agreed to pay a $1.225 million fine.

20. *As to WWL.* On July 11, 2016, Defendant Wallenius Wilhelmsen Logistics AS pleaded guilty to participating in a conspiracy to "suppress and eliminate competition by allocating customers and routes, rigging bids, and fixing prices for international ocean shipping services for roll-on, roll-off cargo, such as cars and trucks, to and from the United States and elsewhere. . . ." According to the plea agreement, the conspiracy was carried out "through certain employees in Norway, Japan, and the United States, including high-level personnel and other individuals with substantial authority within the company." The plea agreement further revealed the conspiracy involved unlawful agreements to "allocate certain customers and routes, rig certain bids, and to fix, stabilize and maintain the prices for certain international ocean shipping services for roll-on, roll-off cargo to and from the United States and elsewhere." On information and belief, Wallenius Wilhelmsen Logistics AS participated in the conspiracy directly and through its U.S. agents

6

(including Defendant Wallenius Wilhelmsen Logistics Americas, LLC).   As a part of its plea agreement with the U.S. Department of Justice, Wallenius Wilhelmsen Logistics AS agreed to pay a criminal fine of $98.9 million.

21.     On October 11, 2016, the Federal Maritime Commission announced that it had reached a "compromise agreement" with WWL to resolve allegations that WWL had "act[ed] in concert with other ocean common carriers with respect to the shipment of automobiles and other motorized vehicles by RO/RO or specialized car carrier vessels, where such agreement(s) had not been filed with the Commission or become effective under the Shipping Act."   Under the agreement with the Federal Maritime Commission, WWL agreed to pay a $1.5 million fine.

22.     *As to MOL.*   On information and belief, MOL received immunity from antitrust authorities for revealing the existence of the illegal conspiracy.

23.     On February 14, 2014, the Federal Maritime Commission announced that it had reached a "compromise agreement" with MOL to resolve allegations that MOL had "act[ed] in concert with other ocean common carriers with respect to the shipment of automobiles and other motorized vehicles by RO/RO or specialized car carrier vessels, where such agreement(s) had not been filed with the Commission or become effective under the Shipping Act."   On information and belief, Mitsui O.S.K. Lines, Ltd. participated in the conspiracy directly and through its U.S. agents (including Defendant Mitsui O.S.K. Bulk Shipping (USA), LLC).   Under the agreement with the Federal Maritime Commission, Mitsui O.S.K. Lines, Ltd. agreed to pay a $1.275 million fine.

24.     *As to K Line.*   On September 26, 2014, Defendant Kawasaki Kisen Kaisha, Ltd. pleaded guilty to participating in a conspiracy to "suppress and eliminate competition by allocating customers and routes, rigging bids, and fixing prices for international ocean shipping services for

roll-on, roll-off cargo, such as cars and trucks, to and from the United States and elsewhere. . . ." According to the plea agreement, the conspiracy was carried out "through certain employees in both Japan and the United States, including high-level personnel and other individuals with substantial authority within the company." The plea agreement further revealed the conspiracy involved unlawful agreements to "allocate certain customers and routes, rig certain bids, and to fix, stabilize and maintain the prices for certain international ocean shipping services for roll-on, roll-off cargo to and from the United States and elsewhere." On information and belief, Kawasaki Kisen Kaisha, Ltd. participated in the conspiracy directly and through its U.S. agents and wholly-owned U.S. subsidiaries (including Defendant "K" Line America, Inc.). As a part of its plea agreement with the U.S. Department of Justice, Kawasaki Kisen Kaisha, Ltd. agreed to pay a criminal fine of $67.7 million.

25. On December 23, 2013, the Federal Maritime Commission announced that it had reached a "compromise agreement" with K Line to resolve allegations that K Line had "act[ed] in concert with other ocean common carriers with respect to the shipment of automobiles and other motorized vehicles by RO/RO or specialized car carrier vessels, where such agreement(s) had not been filed with the Commission or become effective under the Shipping Act." Under the agreement with the Federal Maritime Commission, K Line agreed to pay a $1.1 million fine.

## FIRST COUNT
### (As to All Defendants)
### VIOLATION OF THE NEW JERSEY ANTITRUST ACT
### N.J. STAT. ANN. §§ 56:9-1 ET SEQ.

26. MBUSA restates and realleges the preceding paragraphs of the Complaint as if set forth at length herein.

27. WWL, MOL, NYK, K Line, and other carriers are competitors in the market for the provision of RoRo Services between the United States and Europe, and other regions. They

8

entered into and engaged in a contract, combination in the form of trust or otherwise, or conspiracy in an unreasonable restraint of trade or commerce, which is a per se violation of N.J. STAT. ANN. § 56:9-3.

28.    The acts done in furtherance of this contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives, including those within the State of New Jersey, while actively engaged in the management of the carriers' affairs.

29.    As a result of this violation of N.J. STAT. ANN. § 56:9-3, MBUSA was injured in its business or property because of the higher prices it paid for RoRo Services.

30.    Defendants are jointly and severally liable for the overcharges paid by MBUSA due to the unlawful conspiracy.

31.    Defendants intentionally concealed their unlawful cartel and its effects on the prices that MBUSA paid for RoRo Services for many years. They took affirmative steps, such as meeting and communicating in secret, to keep the facts concerning the existence and operation of the cartel hidden.   While the conspiracy was ongoing, MBUSA could not have discovered Defendants' unlawful conduct, even through the exercise of reasonable diligence.

32.    Because MBUSA could not have discovered the facts giving rise to its claims before September 6, 2012, the statute of limitations for MBUSA's claims started running no earlier than September 6, 2012.

33.    Moreover, on August 9, 2013, an antitrust class action complaint was filed against NYK, WWL, MOL, and K Line, and others, in the federal district court in the District of New Jersey, on behalf of the putative class of direct purchasers of RoRo Services ("Direct Purchaser

Action"), asserting substantially the same claims as those asserted by MBUSA under the New Jersey Antitrust Act in this case.

34. On August 28, 2015, the District Court dismissed the Direct Purchaser Action on procedural grounds, and the putative class appealed. On January 18, 2017, the Third Circuit Court of Appeals affirmed the District Court's dismissal of the Direct Purchaser Action. The U.S. Supreme Court denied the Direct Purchasers' petition for certiorari on October 2, 2017.

35. MBUSA, as a direct purchaser of RoRo Services, was a member of the putative class in the Direct Purchaser Action, although it was not represented by counsel for the Direct Purchasers and did not participate in that case or any of its briefing. Thus, the statute of limitations for MBUSA's claims under the New Jersey Antitrust Act was equitably tolled during the pendency of the Direct Purchaser Action (between August 9, 2013 and October 2, 2017).

**WHEREFORE,** Plaintiff Mercedes-Benz USA, LLC, hereby demands judgment be entered against Defendants Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., NYK Bulkship (USA) Inc., Wallenius Wilhelmsen Logistics AS aka Wallenius Wilhelmsen Ocean AS, Wallenius Wilhelmsen Logistics Americas LLC, Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk Shipping (USA), LLC, Kawasaki Kisen Kaisha, Ltd., and "K" Line America, Inc., jointly and severally, in favor of MBUSA on its First Count of the Complaint, as follows:

        a.     For compensatory damages;

        b.     For treble damages;

        c.     For punitive damages;

        d.     For interest, counsel fees, and costs of suit; and

        e.     For such other and further relief as the Court deems equitable and just.

## SECOND COUNT
### (As to All Defendants)
### BREACH OF CONTRACT; GOOD FAITH AND FAIR DEALING

36.     MBUSA restates and realleges the preceding paragraphs of the Complaint as if set forth at length herein.

37.     Either by express, written contracts or contracts implied by conduct, MBUSA contracted with NYK for the provision of RoRo Services, and at least some of these contracts are governed by New Jersey law. Moreover, every contract governed by New Jersey law contains an implied covenant of good faith and fair dealing.  Pursuant to these contracts, MBUSA paid NYK for RoRo Services between 1997 and 2013.

38.     Either by express, written contracts or contracts implied by conduct, MBUSA contracted with WWL for the provision of RoRo Services, and at least some of these contracts are governed by New Jersey law. Moreover, every contract governed by New Jersey law contains an implied covenant of good faith and fair dealing. Pursuant to these contracts, MBUSA paid WWL for RoRo Services between 1997 and 2013.

39.     Either by express, written contracts or contracts implied by conduct, MBUSA contracted with MOL for the provision of RoRo Services, and at least some of these contracts are governed by New Jersey law. Moreover, every contract governed by New Jersey law contains an implied covenant of good faith and fair dealing.  Pursuant to these contracts, MBUSA paid MOL for RoRo Services between 1997 and 2013.

40.     Either by express, written contracts or contracts implied by conduct, MBUSA contracted with K Line for the provision of RoRo Services, and at least some of these contracts are governed by New Jersey law. Moreover, every contract governed by New Jersey law contains an implied covenant of good faith and fair dealing. Pursuant to these contracts, MBUSA paid

K Line for RoRo Services between 1997 and 2013.

41.     MBUSA reasonably expected each Defendant would not overcharge MBUSA based on a conspiracy with its competitors. However, NYK, WWL, MOL, and K Line did conspire with their competitors and overcharge MBUSA.

42.     By participating in the conspiracy, NYK breached the terms of at least some of its contracts with MBUSA. As a result of these breaches, MBUSA suffered damages in the form of the higher prices it paid for RoRo Services.

43.     By participating in the conspiracy, WWL breached the terms of at least some of its contracts with MBUSA. As a result of these breaches, MBUSA suffered damages in the form of the higher prices it paid for RoRo Services.

44.     By participating in the conspiracy, MOL breached the terms of at least some of its contracts with MBUSA. As a result of these breaches, MBUSA suffered damages in the form of the higher prices it paid for RoRo Services.

45.     By participating in the conspiracy, K Line breached the terms of at least some of its contracts with MBUSA. As a result of these breaches, MBUSA suffered damages in the form of the higher prices it paid for RoRo Services.

46.     Defendants intentionally concealed their unlawful cartel and its effects on the prices that MBUSA paid for RoRo Services for many years. They took affirmative steps, such as meeting and communicating in secret, to keep the facts concerning the existence and operation of the cartel hidden.  While the conspiracy was ongoing, MBUSA could not have discovered Defendants' unlawful conduct, even through the exercise of reasonable diligence.

47.     Because MBUSA could not have discovered the facts giving rise to its claims before September 6, 2012, the statute of limitations for MBUSA's claims started running no earlier than September 6, 2012.

**WHEREFORE,**  Plaintiff Mercedes-Benz USA, LLC, hereby demands judgment be entered against Defendants, Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., NYK Bulkship (USA) Inc., Wallenius Wilhelmsen Logistics AS aka Wallenius Wilhelmsen Ocean AS, Wallenius Wilhelmsen Logistics Americas LLC, Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk Shipping (USA), LLC, Kawasaki Kisen Kaisha, Ltd., and "K" Line America, Inc., jointly and severally, in favor of MBUSA on its Second Count of the Complaint, as follows:

      a.      For compensatory damages;

      b.      For interest, counsel fees, and costs of suit; and

      c.      For such other and further relief as the Court deems equitable and just.

**THIRD COUNT**
**(As to All Defendants)**
**TORTIOUS INTERFERENCE**

48.     MBUSA restates and realleges the preceding paragraphs of the Complaint as if set forth at length herein.

49.     MBUSA periodically engaged in negotiations with NYK for the provision of RoRo Services. MBUSA reasonably expected that the commercial terms it negotiated with NYK would reflect fair market prices, and NYK knew that was the case.  However, WWL, MOL, and K Line each took actions to intentionally and maliciously interfere with MBUSA's ability to negotiate the best possible commercial terms with NYK through their conspiracy to overcharge customers.

50.     MBUSA periodically engaged in negotiations with WWL for the provision of RoRo Services. MBUSA reasonably expected that the commercial terms it negotiated with WWL

would reflect fair market prices, and WWL knew that was the case. However, NYK, MOL, and K Line each took actions to intentionally and maliciously interfere with MBUSA's ability to negotiate the best possible commercial terms with WWL through their conspiracy to overcharge customers.

51.     MBUSA periodically engaged in negotiations with MOL for the provision of RoRo Services. MBUSA reasonably expected that the commercial terms it negotiated with MOL would reflect fair market prices, and MOL knew that was the case. However, NYK, WWL, and K Line each took actions to intentionally and maliciously interfere with MBUSA's ability to negotiate the best possible commercial terms with MOL through their conspiracy to overcharge customers.

52.     MBUSA periodically engaged in negotiations with K Line for the provision of RoRo Services. MBUSA reasonably expected that the commercial terms it negotiated with K Line would reflect fair market prices, and K Line knew that was the case. However, NYK, WWL, and MOL each took actions to intentionally and maliciously interfere with MBUSA's ability to negotiate the best possible commercial terms with K Line through their conspiracy to overcharge customers.

53.     Thus, MBUSA has suffered damages in the form of the higher prices it paid as a result of each Defendant's interference with MBUSA's contracts and/or potential business relationships with the other carriers, and each Defendant is jointly and severally liable for the harm it caused by working in concert with the other Defendants to interfere with MBUSA's contracts and/or potential business relationships with other carriers.

54.     Defendants intentionally concealed their unlawful cartel and its effects on the prices that MBUSA paid for RoRo Services for many years. They took affirmative steps, such as meeting and communicating in secret, to keep the facts concerning the existence and operation of the cartel

hidden.   While the conspiracy was ongoing, MBUSA could not have discovered Defendants' unlawful conduct, even through the exercise of reasonable diligence.

55.   Because MBUSA could not have discovered the facts giving rise to its claims before September 6, 2012, the statute of limitations for MBUSA's claims started running no earlier than September 6, 2012.

**WHEREFORE,**   Plaintiff Mercedes-Benz USA, LLC, hereby demands judgment be entered against Defendants, Nippon Yusen Kabushiki Kaisha, NYK Line (North America) Inc., NYK Bulkship (USA) Inc., Wallenius Wilhelmsen Logistics AS aka Wallenius Wilhelmsen Ocean AS, Wallenius Wilhelmsen Logistics Americas LLC, Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk Shipping (USA), LLC, Kawasaki Kisen Kaisha, Ltd., and "K" Line America, Inc., jointly and severally, in favor of MBUSA on its Third Count of the Complaint, as follows:

a.   For compensatory damages;

b.   For punitive damages;

c.   For interest, counsel fees, and costs of suit; and

d.   For such other and further relief as the Court deems equitable and just.

**ARCHER & GREINER, P.C.**
*Attorneys for Plaintiff*
*Mercedes-Benz USA, LI*

By _____
        Thomas J. Herten
        Nicole G. McDonough

Dated: August 29, 2018

## <u>CERTIFICATION PURSUANT TO R.</u> 4:5-1 AND 1:38-7(b)

To the best of my knowledge and belief, this matter in controversy is not the subject of any other action pending in any Court, or of a pending arbitration proceeding, nor is any such proceeding contemplated at this time.  MBUSA is simultaneously filing arbitration demands to preserve its rights in the event Defendants contend that some or all of its claims should proceed in another forum.

To the best of my knowledge and belief, there are no other parties who must be joined in this action.

All confidential personal identifiers have been redacted from the documents now submitted to the Court and will be redacted from all documents submitted in the future as required by Rule 1:38-7(b).

**ARCHER & GREINER, P.C.**
*Attorneys for Plaintiff*
*Mercedes-Benz USA, LLC*

By _____

Thomas J. Herten
Nicole G. McDonough

Dated: August 29, 2018

16

## DESIGNATION OF TRIAL COUNSEL

MBUSA designates Quinn Emanuel Urquhart & Sullivan, LLP and Archer & Greiner, P.C.

as trial counsel for MBUSA in this action.

## DEMAND FOR JURY TRIAL

MBUSA demands a trial by jury of any issues so triable.

ARCHER & GREINER, P.C.
*Attorneys for Plaintiff*
*Mercedes-Benz USA, LLC*

By _Mt-LA_ \A\
Thomas J. Herten
Nicole G. McDonough

Dated: August 29, 2018

215122138v1

17

# Civil Case Information Statement

**Case Details: BERGEN | Civil Part Docket# L-006325-18**

**Case Caption:** MERCEDES-BENZ USA, L LC VS NIPPON YUSEN KABUSHI

**Case Initiation Date:** 08/30/2018

**Attorney Name:** THOMAS J HERTEN

**Firm Name:** ARCHER & GREINER PC

**Address:** 21 MAIN STREET   SUITE 353 COURT PLAZA SOUTH - WEST WING

HACKENSACK NJ 07601

**Phone:**

**Name of Party:** PLAINTIFF : Mercedes-Benz USA, LLC

**Name of Defendant's Primary Insurance Company (if known):** Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

   **If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/30/2018
Dated

/s/ THOMAS J HERTEN
Signed