NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

—————————————————————

|  |  |  |
|---|---|---|
| MERCEDES-BENZ USA, LLC, | : | |
| | : | **Civil Action No. 18-13764 (SRC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NIPPON YUSEN KABUSHIKI KAISHA, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

—————————————————————

**CHESLER**, District Judge

This matter comes before the Court upon Plaintiff's motion to remand this action to the Superior Court of New Jersey. Defendants have opposed the motion. The Court has considered the papers filed by the parties, and for the reasons discussed below, will grant the motion to remand.

**I. BACKGROUND**

Plaintiff Mercedes-Benz USA, LLC ("Plaintiff" or "MBUSA") is a company engaged in the import, distribution and sale of Mercedes Benz automobiles and light trucks in the United States. The various Defendants, which consist of four foreign parent companies and their American subsidiaries, are ocean common carriers engaged in the business of transporting cargo between the United States and foreign countries. The Complaint names the following Defendants: Nippon Yusen Kabushiki Kaisha ("NYK"); NYK Line (North America) Inc. ("NYK NA"); NYK Bulkship (USA) Inc. ("NYK USA"); Wallenius Wilhelmsen Logistics AS ("WWL"); Wallenius Wilhelmsen Logistics Americas LLC ("WWL Americas"); Mitsui O.S.K.

Lines, Ltd. ("MOL"); Mitsui O.S.K. Bulk Shipping (USA), LLC ("MOL USA"); Kawasaki Kisen Kaisha, Ltd. ("Kawasaki"); and "K" Line America, Inc. ("K Line").

This action arises out of shipping services procured by MBUSA from Defendants between 1997 and 2013 for the transport of vehicles to the United States from locations overseas. Plaintiff alleges that Defendants participated in an unlawful conspiracy to overcharge customers, including MBUSA, for "roll on, roll off" cargo services, referred to by the abbreviated name "RoRo Services." According to the Complaint, "RoRo Services are deep water, international liner shipping services for cargo that can be 'rolled on' an ocean-going vessel at a port of loading (without the use of shipping containers) and then 'rolled off' the vessel at the destination port." (Compl., ¶ 14.) Plaintiff avers that Defendants secretly and regularly met with each other and communicated "to exchange competitively sensitive information about prices, customers, and routes in order to rig bids, allocate customers or markets, and fix prices." (Id., ¶ 15.) This conspiracy, Plaintiff further avers, caused MBUSA to pay higher prices for RoRo services than it would have paid had competition not been unlawfully restrained.

The Complaint notes that a similar antitrust lawsuit was filed as a putative class action in the federal district court for the District of New Jersey in 2013 on behalf of purchasers of RoRo services from some of the Defendants named here, as well as many others. That earlier antitrust suit of a similar nature proceeded in the District Court as a multidistrict litigation entitled "In re Vehicle Carrier Services Antitrust Litigation."[1] Vehicle Carrier Services, also based on allegations that ocean common carrier defendants had entered into collusive, secret agreements

---

[1] The case was assigned MDL No. 2471. Though the Complaint uses the shorthand name "Direct Purchaser Action" for that lawsuit, the Court will refer to it as the "Vehicle Carrier Services" litigation.

concerning RoRo Services, involved federal antitrust claims under the Clayton Act as well as state antitrust and consumer protection claims. As the Complaint recites, Vehicle Carrier Services was ultimately dismissed in its entirety, and the Third Circuit Court of Appeals affirmed the dismissal on January 18, 2017. A petition for a writ certiorari to the Supreme Court was denied on October 2, 2017.

On August 30, 2018, MBUSA initiated this action in the Superior Court of New Jersey, Law Division, Bergen County. The Complaint filed by MBUSA asserts three claims against all Defendants: violation of the New Jersey Antitrust Act, N.J.S.A. § 56:9-1, et seq. (First Count); breach of contract and of the covenant of good faith and fair dealing (Second Count); and tortious interference (Third Count). On September 11, 2018, the WWL Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441. The other Defendants thereafter joined in the removal.[2]

MBUSA has now moved for remand of this action to New Jersey state court. Plaintiff challenges the existence of federal subject matter jurisdiction, maintaining that the Court has neither federal question nor diversity jurisdiction over this action.

[2] Defendants have entered their appearances, without waiving any defenses, for the purposed of filing their consent to removal of this action

## II.   DISCUSSION

Pursuant to 28 U.S.C. § 1441(a), any civil action over which "the district courts of the United States have original jurisdiction" may be removed from state court to federal court. In other words, section 1441 authorizes removal "so long as the district court would have had subject-matter jurisdiction had the case been originally filed before it." A.S. SmithKline Beecham Corp., 769 F.3d 204, 208 (3d Cir. 2014). A litigant removing an action pursuant to 28 U.S.C. § 1441 bears the burden of demonstrating that there is federal subject matter jurisdiction over the action. Samuel–Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004). Because federal courts are courts of limited jurisdiction, removal statutes must be strictly construed. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); see also Samuel-Bassett, 357 F.3d at 396 (holding that 28 U.S.C. § 1441 is to be strictly construed against removal). Accordingly, the Third Circuit directs that if "there is any doubt as to the propriety of removal, [the] case should not be removed to federal court." Brown v. Francis, 75 F.3d 860, 865 (3d Cir. 1996); see also Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992) (holding that where a case is removed to federal court, all doubts concerning whether the Court has subject matter jurisdiction must be resolved in favor of remand).

In this case, the Notice of Removal asserts that this Court has subject matter jurisdiction over the action on two grounds: (1) the action arises under the laws of the United States and thus federal question jurisdiction exists under 28 U.S.C. § 1331; and (2) there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000 and thus diversity jurisdiction exists under 28 U.S.C. § 1332(a). The Court will examine each basis for subject matter jurisdiction in turn.

## A. Federal Question Jurisdiction

Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Known as "federal question jurisdiction," section 1331 jurisdiction generally exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Under the "well-pleaded complaint" rule, "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003) (quoting Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908)). The existence or possibility of a federal defense, including a defense that relies on the pre-emptive effect of a federal statute, does not confer federal question jurisdiction. Id.; Franchise Tax Bd. of Cal. v. Constr. Laborers Trust for S. Cal., 463 U.S. 1, 12 (1983); N.J. Carpenters v. Tishman Constr. Corp., 760 F.3d 297, 302 (3d Cir. 2014). Indeed, it is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, 482 U.S. at 393 (citing Franchise Tax Bd., 463 U.S. at 12) (emphasis in original). On the matter of the removability of an action from state court, the Supreme Court thus summarized the law as follows: "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Beneficial Nat'l Bank, 539 U.S. at 6.

The complete preemption doctrine, invoked by Defendants in the removal of this purely state law action, is a well-recognized albeit narrow exception to the well-pleaded complaint rule. Id. The Supreme Court has held that complete preemption applies when a federal cause of action "wholly displaces the state-law cause of action" asserted in a complaint such that the claim, though ostensibly seeking relief under state law, in reality arises under federal law and is thus removable under section 1441. Beneficial Nat'l Bank, 539 U.S. at 8. "Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim." Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 45 (1st Cir. 2008). The doctrine of complete preemption in effect "converts a state-law claim into a federal one." Caterpillar, 482 U.S. at 393; see also Tishman, 760 F.3d at 302 (holding that complete preemption "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint.").

In Beneficial National Bank, the Supreme Court articulated an exacting standard for complete preemption. A claim must come within the scope of a federal statute that has unusually powerful preemptive force, that is, federal authority "'so powerful as to displace entirely any state cause of action.'" Beneficial Nat'l Bank, 539 U.S. at 7 (quoting Franchise Tax Bd., 463 U.S. at 23-24). In addition, the federal statute must provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Id. at 8.

In this case, Defendants argue that although MBUSA's Complaint seeks relief only under state law causes of action, the doctrine of complete preemption applies and requires the action to

be construed as arising under the Shipping Act of 1984, 46 U.S.C. § 40101, <u>et seq.</u> (the

"Shipping Act"). The Shipping Act, Defendants maintain, exclusively governs international

shipping practices and ocean commerce, including agreements among ocean common carriers

which, among other things, set transportation rates, regulate the volume of cargo to be carried,

and control competition in international ocean transportation. <u>See</u> 46 U.S.C. § 40301(a)

(providing scope of matters covered by the Shipping Act). Citing the Third Circuit's precedential

decision in <u>Vehicle Carrier Services</u>, Defendants assert that "the Shipping Act provides the

exclusive cause of action for claims related to allegedly unfiled, secret agreements between

ocean carriers." (Def. Opp. at 22, citing <u>In re Vehicle Carrier Servs. Antitrust Litig.</u>, 846 F.3d 71

(3d Cir. 2017)). They argue that all of MBUSA's claims stem from allegations that ocean

carriers entered into secret and collusive agreements to fix prices and restrain competition related

to the international maritime transportation of cargo. These matters, Defendants maintain, fall

within the exclusive purview of the federal Shipping Act, as held by the Third Circuit in <u>Vehicle</u>

<u>Carrier Services</u>. Defendants contend that the action filed by MBUSA in state court in reality

arises under the Shipping Act and is therefore removable to this Court, in accordance with the

doctrine of complete preemption.

      <u>Vehicle Carrier Services</u>, on which Defendants base a significant portion of their

argument, makes it abundantly clear that the Shipping Act has unusually powerful preemptive

force. The Third Circuit's opinion holds that the Shipping Act governs all matters related to the

common carriage of goods in international maritime commerce. <u>Vehicle Carrier Servs.</u>, 846 F.3d

at 82, 84-85. The decision, however, does not address the question of whether the Shipping Act

triggers complete preemption. Indeed, a jurisdictional doctrine bearing on the removal of state

law actions would have been inapposite to a case which was filed in federal court and which affirmatively pleaded federal antitrust claims. Nevertheless, the Third Circuit's thorough discussion of the Shipping Act in Vehicle Carrier Services informs the jurisdictional analysis this Court must conduct.

The Third Circuit summarized the reach of the Shipping Act as follows: "the Shipping Act's text, scheme, and legislative history demonstrate Congress's intent to create a comprehensive, predictable federal framework to ensure efficient and nondiscriminatory international shipping practices." Id. at 82. To that end, the Third Circuit observed, the Shipping Act provides broad immunity from federal antitrust suits for conduct regulated by the statute, which includes the agreements and activities of ocean common carriers related to transportation rates, competition, and cargo capacity. Id. at 80-81. This immunity from suit, the Court further observed, encompasses matters recorded in agreements filed with the Federal Maritime Commission (the "Commission") as well as those matters concerning agreements which have not been filed with the Commission. Id. at 81 (citing 46 U.S.C. §§ 40301 & 40307). The Court of Appeals thus held that the federal antitrust claims asserted in Vehicle Carrier Services were barred. Id. It also affirmed the district court's dismissal of the state law claims on the grounds of conflict preemption. Id. at 85-86. The Third Circuit reasoned that the state claims would interfere "in an area Congress has historically regulated: maritime commerce" and "would also thwart Congress's goal of ensuring uniform regulation of ocean common carriers' business practices." Id.

Of significance to this Court's complete preemption analysis, the Vehicle Carrier Services court noted that while the plaintiffs' federal and state claims could not proceed, the

Shipping Act did not leave aggrieved parties without recourse. The Shipping Act, the court observed, provides a system of redress before the Commission. Vehicle Carrier Servs., 846 F.3d at 81. Following a thorough discussion of the Shipping Act's framework, the Third Circuit held that the statute's remedial scheme was to be administered and enforced by the Commission and, moreover, would provide "the exclusive remedies and sanctions for violations of the Act." Id. at 82 (quoting H.R. Rep. No. 98-53(I), at 12). In other words, the Third Circuit's opinion makes it abundantly clear that the Shipping Act provides for relief solely through proceedings before the Commission. Id. at 81-82.

Equipped with this information concerning the Shipping Act, the Court turns to the critical question presented in this motion for remand: can complete preemption operate to remove a state law action where, as here, the federal statute in question has powerful preemptive force but requires that disputes be resolved in a forum other than a federal district court? Defendants do not cite, and the Court's own research has not uncovered any Supreme Court or Third Circuit authority addressing this nuance in a complete preemption analysis conducted according to the standard articulated in Beneficial National Bank. The Court has thus sought guidance from other Circuit Courts of Appeal. Its review of the caselaw has led the Court to find the opinion issued by the Second Circuit Court of Appeals in Sullivan v. American Airlines to be most instructive to this Court's analysis. See 424 F.3d 267 (2d Cir. 2005).

In Sullivan, the airline defendants had invoked the complete preemption doctrine to remove an action in which the plaintiffs, airline employees, brought state law defamation claims against their employer and others. Id. at 268-69. The district court had accepted the notice of removal's premise that the Railway Labor Act ("RLA") completely preempted the state claims

and then had proceeded to dismiss one of the claims. <u>Id.</u> at 270. On appeal seeking review of the claim dismissal, the Second Circuit raised the issue of subject matter jurisdiction <u>sua</u> <u>sponte</u>, specifically questioning whether, wholly apart from any ordinary preemptive force the RLA might have, the federal statute could support removal under complete preemption. <u>Id.</u> The <u>Sullivan</u> court noted that the RLA gives primary jurisdiction over disputes falling within its scope (certain disputes between airlines and their employees) to arbitral panels established under the statute. <u>Id.</u> at 270. Following its discussion of the complete preemption doctrine and the standard developed by the Supreme Court, the Second Circuit held that the standard had not been met by the RLA. <u>Id.</u> at 276. It reasoned that because the RLA did not create a claim which could be filed in the first instance in federal court, it did not provide a basis for removal under 28 U.S.C. § 1441 and could therefore not trigger complete preemption. <u>Id.</u>

The <u>Sullivan</u> court emphasized the significance of the removal statute in the complete preemption standard articulated by the Supreme Court in <u>Beneficial National Bank</u>. <u>Id.</u> The standard, <u>Sullivan</u> noted, inquires whether a federal statute provides the exclusive cause of action for a dispute so that a federal court can conclude that the asserted state law claim is, in the words of the Supreme Court, "in reality based on federal law . . . [and] is then removable under § 1441(b) . . .." <u>Id.</u> (quoting <u>Beneficial Nat'l Bank</u>, 539 U.S. at 8). The Second Circuit explained as follows:

> This language from <u>Beneficial National Bank</u> makes clear an aspect of the complete-preemption doctrine that is often overlooked: removal of state law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of a substantive federal statute such as the LMRA, ERISA, or the National Bank Act, but rather because a federal statute with completely preemptive force also gives rise to *original* federal jurisdiction, and as a consequence allows removal under 28 U.S.C. § 1441.

Id. (emphasis added). The dispute at issue in Sullivan, the Second Circuit recognized, was governed by the RLA but, according to the terms and limitations of that statute, could not be brought within the original jurisdiction of the federal courts, as required for removal under 28 U.S.C. § 1441. Id. Rather, the Sullivan court observed, the RLA vested authority to resolve disputes solely in the adjustment boards established pursuant to the RLA. Id. Complete preemption in such a situation would be, the court reasoned, "internally inconsistent: the district court must have jurisdiction for removal to be proper, but the court must then dismiss the removed case because only adjustment boards, not federal courts, have primary jurisdiction over claims arising under the RLA." Id. Accordingly, the Second Circuit rejected the defendant airline's attempt to remove the state law action under complete preemption and remanded the action to the district court with instructions that it be remanded to state court. Id. at 278.

This Court is presented with a near-identical situation in this action, in which the Shipping Act is presumably the basis for the Court's jurisdiction and yet would require that the Court dismiss the action because sole authority to handle the dispute is vested in the Commission. For the same reasons articulated by the Second Circuit in Sullivan, this Court finds that the standard for complete preemption has not been met in this case. The federal Shipping Act does not supply a federal cause of action which would give the Court original jurisdiction over the action. Rather, like the federal statute at issue in Sullivan, the Shipping Act requires that all disputes be filed and addressed in a non-judicial forum. Indeed, the entire structure of the Shipping Act vests broad and primary authority over maritime shipping disputes in the Commission. See Vehicle Carrier Servs., 846 F.3d at 82 (noting Congressional intent to remove the courts from the regulation of ocean liner shipping and instead provide "a predictable legal

regime and streamlined regulatory process administered and enforced by a single independent Federal agency (the [FMC]) to better serve the needs of U.S. foreign commerce.") (alterations in original).

Beneficial National Bank and its progeny make it clear that complete preemption turns on whether the applicable federal statute provides an *exclusive cause of action* giving rise to the Court's *original* jurisdiction. Beneficial Nat'l Bank, 539 U.S. at 8; Sullivan, 424 F.3d at 276; see also López-Muñoz v. Triple-S Salud, Inc., 754 F.3d 1, 5 (1st Cir. 2014) ("The Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim, coupled with a federal cause of action for wrongs of the same type.") (quoting Fayard, 533 F.3d at 46); Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1245 (9th Cir. 2009) ("a federal statute must provide the 'exclusive cause of action' for complete preemption to apply"); Lontz v. Tharp, 413 F.3d 435, 442 (4th Cir. 2005) ("The *sine qua non* of complete preemption is a pre-existing federal cause of action that can be brought in the district courts."); cf. Elam v. Kan. City S. Ry., 635 F.3d 796, 808-09 (5th Cir. 2011) (finding complete preemption under the federal statute at issue because it allows an injured party to file a complaint with an administrative authority created by the statute or bring a civil action in federal court, thus providing a federal cause of action over which a district court has original jurisdiction). Powerful as it may be, the Shipping Act simply does not create an exclusive federal cause of action which the controversy set forth in the Complaint could

"arise under" and which could originally have been filed in federal court. [3] As such, the Court cannot recharacterize the Complaint to assert a cognizable federal cause of action under the Shipping Act and cannot, therefore, conclude that the case is removable under 28 U.S.C. § 1441 and the doctrine of complete preemption.

Defendants, in short, have not met their burden of demonstrating that the Court has federal question jurisdiction. Clearly, a federal question is not apparent on the face of the Complaint. Moreover, for the reasons discussed, the doctrine of complete preemption does not apply.

### B. Diversity Jurisdiction

The Court turns, then, to an examination of whether it has diversity jurisdiction over this action under 28 U.S.C. § 1332(a). The relevant subsections of the jurisdictional statute provide that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states [or] citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(1) & (2). It is well-established that diversity jurisdiction under § 1332(a) requires complete diversity, meaning that the citizenship of each plaintiff must be different than

---

[3] The Shipping Act, the Court notes, does provide a mechanism in which a party may seek injunctive relief from a federal district court. See 46 U.S.C. § 1306. Nevertheless, the statute neither gives rise to original federal jurisdiction nor does it grant district courts plenary authority to resolve disputes governed by the Shipping Act. The Shipping Act authorizes a private party to file an injunctive action in federal court only *after* a matter has been initiated with the Commission. 46 U.S.C. § 41306(a). Moreover, the statute limits the power of district court, which may only grant a temporary or preliminary injunction pending the outcome of the proceeding before the Commission. 46 U.S.C. § 41306(c).

the citizenship of each defendant. <u>Exxon Mobil Corp. v. Allapattah Svcs., Inc.</u>, 545 U.S. 546, 553-54 (2005) (discussing complete diversity rule to which the Court has adhered); <u>Strawbridge v. Curtiss</u>, 3 Cranch 267, 2 L.Ed. 435 (1806) (holding that, for jurisdiction to attach under section 1332(a)(1), there must be complete diversity between all plaintiffs and defendants). The Supreme Court has held that "the presence in [an] action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." <u>Exxon Mobil</u>, 545 U.S. at 553; <u>see also</u> <u>Zambelli Fireworks Mfg. Co., Inc. v. Wood</u>, 592 F.3d 412, 420 (3d Cir. 2010) ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant.").

Plaintiff argues that complete diversity is lacking in this action because it shares common citizenship with three of Defendants named in the Complaint – NYK NA; NYK USA; and K Line. Defendants, in response, do not dispute that these three entities have citizenship in common with Plaintiff. Instead, they argue that their citizenship must be disregarded for purposes of diversity jurisdiction because (1) NYK NA and K Line are nominal parties and (2) NYK USA was dissolved in 2007, years before this action was filed.

While the citizenship of nominal parties must be disregarded for purposes of determining diversity jurisdiction, <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458, 461 (1980), Defendants' argument is unavailing. A nominal party is one "without a true interest in the litigation." <u>Bumberger v. Ins. Co. of N. Am.</u>, 952 F.2d 764, 767 (3d Cir. 1991). Typically, parties are considered nominal in the following circumstances: they are named to satisfy state pleading rules; they are joined only as the designated performer of a ministerial act; or they otherwise had no control of, impact on, or stake in the controversy. <u>Lincoln Prop. Co. v. Roche</u>, 546 U.S. 81, 92

(2005). Defendants fail to demonstrate that NYK NA and K Line are such parties. To the contrary, the allegations in the Complaint indicate that these Defendants have a true interest in the litigation. NYK NA and K Line are ocean common carriers which, according to the Complaint, participated in the alleged conspiracy to fix rates and manage capacity for RoRo services. The Complaint alleges that the foreign ocean common carrier Defendants carried out their scheme "directly and through [their] U.S. agents and wholly-owned U.S. subsidiaries," including NYK NA and K Line. (Compl., ¶¶ 18, 24.) Defendants contend that these subsidiary entities are "nominal" because they did not contract directly with MBUSA for the provision of RoRo services and argue that they merely performed ministerial functions in handling documentation and administrative details related to those contracts. In spite of Defendants' attempt to minimize the role played by Defendants NYK NA and K Line, the Complaint alleges that these entities acted in furtherance of the conspiracy concerning RoRo services, caused MBUSA to pay in excess for such services, and thus bear liability. Non-diverse Defendants NYK NA and K Line are not, in short, nominal in any sense. See Lincoln Prop. Co., 546 U.S. at 93 (holding that a defendant that "would be liable to pay a resulting judgment is not 'nominal' in any sense."). The Court must therefore consider their citizenship for purposes of determining

whether it has diversity jurisdiction.[4] <u>Navarro Sav. Ass'n</u>, 446 U.S. at 460 (holding that, in

determining whether there is diversity jurisdiction, a district court must consider the citizenship

of defendants who are "real and substantial parties to the controversy.").

Without taking the citizenship of now-defunct Defendant NYK USA into consideration,

the Court can nevertheless conclude that Defendants NYK NA and K Line destroy complete

diversity. Plaintiff MBUSA, a limited liability company, is a citizen of Delaware and Michigan,

the state of incorporation and principal place of business of MBUSA's sole member, Daimler

North America Corporation. <u>Zambelli Fireworks</u>, 592 F.3d at 420 (holding that "the citizenship

of an LLC is determined by the citizenship of its members."); 28 U.S.C. § 1332(c)(1) ("a

corporation shall be deemed to be a citizen of every State and foreign state by which it has been

incorporated and of the State or foreign state where it has its principal place of business . . ..")

Defendant NYK NA, a corporation, is a citizen of Delaware (state of incorporation) and New

Jersey (principal place of business). Defendant K Line, also a corporation, is a citizen of

Michigan (state of incorporation) and Virginia (principal place of business). Thus, Plaintiff is

correct that diversity jurisdiction does not exist in this action.

---

[4] The citizenship of a non-diverse defendant may also be disregarded if that defendant was fraudulently joined, but a removing party bears a heavy burden of demonstrating that the non-diverse defendant was named solely for the purpose of defeating diversity jurisdiction. <u>In re Briscoe</u>, 448 F.3d 201, 217 (3d Cir. 2006) (reviewing the Third Circuit's fraudulent joinder jurisprudence). Defendants make it clear that that they do not rely on the doctrine of fraudulent joinder in opposing remand of this action for lack of subject matter jurisdiction. (<u>See</u> Def. Opp. Br. 10-11.) Indeed, there is no indication that the doctrine would apply, as "[j]oinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." <u>Id.</u> (quoting <u>Batoff v. State Farm Ins. Co.</u>, 977 F.2d 848, 851-52 (3d Cir. 1992)).

### C.  Plaintiff's Request for an Award of Costs

In its motion to remand, Plaintiff argues that Defendants' removal was objectively meritless and thus requests that the Court award the attorneys' fees and costs Plaintiff incurred in filing the motion. Under 28 U.S.C. § 1447(c), the Court may, in its order of remand, require the removing party to pay "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that the standard for awarding such fees and costs is as follows: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). In its discretion, the Court declines to award fees and costs under section 1447(c). While the Court has ultimately concluded that it lacks subject matter jurisdiction, Defendants' removal was not objectively unreasonable. Removal was based on the strong federal interest in the dispute at issue in the Complaint, as expressed in the Shipping Act. The complete preemption argument made by Defendants provided an objectively reasonable, albeit unsuccessful basis for removal. Accordingly, the request for fees and costs will be denied.

**III.    CONCLUSION**

For the reasons discussed, the Court concludes that Defendants, the removing parties,

have failed to demonstrate that this Court has subject matter jurisdiction over the action.

Accordingly, pursuant to 28 U.S.C. § 1447(c), this case must be remanded to state court. Fees

and costs will not be awarded to Plaintiff. An appropriate Order will be filed.


       s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  December 12, 2018